IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:20cr250 |
| | ) | |
| MOHAMED ABDALLA, | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | Hearing Date: March 19, 2021 |

## United States' Sentencing Position

The United States of America, through undersigned counsel and in accord with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual ("Guidelines"), hereby provides its position with respect to sentencing for defendant Mohamed Abdalla ("Abdalla"). The Pre-Sentence Investigation Report ("PSR") has calculated the Guidelines range at 135-168 months. As discussed in further detail in this memorandum, the Government intends to be bound by the Plea Agreement and the intentions of the parties in negotiating the Plea Agreement[1], and recommends that the appropriate guidelines range here is 70-87 months with respect to incarceration.[2] The Government also notes that this Court has already sentenced one defendant

---

[1] The Probation Office has calculated Abdalla's Offense Level at 33 and has used a loss amount of $19,681,933.80 in determining a +20 level increase under §2B1.1. The Government intends to be bound by the terms of the plea agreement, in which the Government has agreed to recommend a +18 increase based on a loss amount of $6,216,434.39. It is also the Government's position that the underlying intent of those negotiations was not to recommend an additional +2 increase based on loss to a federal health care program. Finally, while the Probation Office has recommended a +4 enhancement based on Abdalla's role in the offense, the Government intends to be bound by the terms of the plea agreement and recommend a +2 enhancement based on role. As such, the Government recommends that Abdalla's Offense Level be calculated at 27.

[2] Included in the PSR's advisory Guidelines calculations is a three-level decrease for acceptance of responsibility. In this respect, the United States agrees with the PSR that the defendant qualifies, pursuant to U.S.S.G. § 3E1.1(a), for a two-level reduction. In addition, the defendant timely notified the United States of his intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently.

1

involved in this conspiracy and has elected to sentence below the guidelines range[3]. Based on the advisory Guidelines range, the § 3553(a) factors, and the Court's prior sentence regarding a co-conspirator, a sentence of incarceration of 60 months is sufficient, but not greater than necessary, to account for each of the § 3553(a) factors in this case.

In particular, a sentence of 60 months appropriately captures the seriousness of the defendant's decisions to engage in multiple schemes to defraud health care benefit programs over more than five years resulting in a loss that is approximately $1.7 million for Count 1 and exceeds $6 million for Count 2. Moreover, a sentence of 60 months is necessary to provide general deterrence of fraud schemes, like this one, which are often hard to detect and can cause considerable losses to health care benefit programs, as well as beneficiaries. This recommendation also takes into account that Abdalla significantly profited from his involvement in the conspiracy and was one of the leaders of this massive scheme that spanned approximately half a decade and resulted in considerable loss. On the other hand, this recommendation considers the facts that the Government has no evidence that any patient harm resulted from this conduct, and also recognizes that while Abdalla brought his co-conspirators Mohammed Tariq Amin ("Amin") and Onkur Lal ("Lal") into the conspiracy, these co-conspirators then engaged in various actions in furtherance of the conspiracy without his knowledge and/or direction. Accordingly, the United States requests that this Court impose a sentence of imprisonment of 60 months, a period of supervised release of three years, and full restitution and forfeiture as described in greater detail below.

---

Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

[3] On March 5, 2021, the Court assessed the Guidelines range for defendant Onkur Lal between 57 and 71 months, and sentenced Lal to a term of incarceration of 36 months. *See United States v. Lal*, 1:20-cr-237, Docket No. 20.

## I.  Factual Background[4]

From at least in or around January 2014 through at least around the end of 2018, Abdalla engaged in a variety of schemes to defraud health care benefit programs and to pay unlawful kickbacks for the referral of prescriptions. Abdalla is a licensed pharmacist who owned and/or operated multiple pharmacies located in the Eastern District of Virginia during the time of the conspiracy including Medex Health Pharmacy ("Medex Health") and Royal Care Pharmacy ("Royal Care"). Co-conspirators Amin, Lal, and others worked for Abdalla during this time at some of these pharmacies.

### **Conspiracy To Commit Health Care Fraud**

During the course of the conspiracy, Abdalla and his co-conspirators, including Lal and Amin, would generate false prescriptions using their names, the names of other pharmacy employees, or the names of friends and family members. While the pharmacy benefitted significantly from the fraudulent prescriptions that were billed, one additional benefit of this scheme to the co-conspirators was that it would allow them to exhaust their health care program deductibles, even though they were not actually paying the required co-payments or out-of-pocket expenses. Health care benefit programs paid the pharmacy approximately $245,069.76 for these fraudulent prescriptions.

Furthermore, Abdalla often directed his co-conspirators to bill health care benefit programs for prescriptions for existing pharmacy customers when these prescriptions were never filled. The co-conspirators selected extremely expensive medications when engaging in this scheme to maximize payments received from the health care benefit programs. On occasion, the co-

---

[4] The PSR and the Statement of Facts signed by the defendant (Doc. No. 8) adequately set forth the offense conduct in this case.

conspirators would even send these unnecessary drugs to patients and would receive complaints from these customers upon receipt of these medications. The co-conspirators were paid approximately $4,876,688.96 for this scheme. Because of how rampant and lucrative the fraud was, it is unsurprising that at times during the conspiracy, Royal Care was audited by pharmacy benefit managers.[5] When this occurred, the co-conspirators would take significant actions to try to conceal their fraud including fabricating false invoices and fraudulent copies of prescriptions to mask drug shortages/discrepancies.

Abdalla, Amin, and a medical sales specialist from a pharmaceutical company, Dan Walker, also engaged in a scheme where Abdalla and Amin paid Walker kickbacks for prescriptions received for an expensive naloxone auto-injector device used to treat opioid emergencies. Specifically, Abdalla and Amin entered into an agreement to pay Walker 25% of all net sales for the prescriptions. Abdalla and Amin billed private health insurance companies for these prescriptions that were tainted by the kickbacks, and these private health insurance companies paid millions of dollars for these prescriptions.

Finally, the co-conspirators billed a health benefit program for claims submitted on behalf of members of the health plan for a foreign embassy when these medications were never prescribed by a licensed physician. This health benefit program paid approximately $35,935.38 for prescriptions involved in this illegal conduct. In total, all of the schemes described above resulted in a loss to federal, state, and private health care benefit programs in the amount of approximately $6,216,434.39.

## Conspiracy To Offer and Pay Health Care Kickbacks

---

[5] PBMs are third party administrators of prescription drug plans for federal, state, and private health care benefit programs. Among other things, PBMs process and pay drug claims on behalf of the plans.

Along with the health care fraud schemes already detailed in this memorandum, Abdalla participate in several schemes to pay kickbacks for the referral of prescriptions that were billed to federal health care benefit programs in violation of the Anti-Kickback Statute. For instance, as already described, Abdalla paid kickbacks to Walker for prescriptions for the referral of prescriptions for a naloxone auto-injector device. Some of these kickbacks were for prescriptions paid for by federal health care benefit programs, and these federal health care programs paid over $8 million for these prescriptions tainted by the kickbacks. Thirteen percent of these prescriptions were either not medically necessary, not prescribed by a doctor, and/or never provided to a beneficiary. Abdalla, himself, profited over $1 million from this scheme.

Abdalla also participated in a kickback scheme with Physician 1 and Seth Myers, pursuant to which Physician 1 and other doctors recruited by Physician 1 and Myers would send prescriptions for expensive compound medications to Medex Health in exchange for kickbacks. The co-conspirators agreed that 20% of the profit would go to Abdalla. Again, Abdalla profited over $1 million from this scheme.

After Abdalla was approached by the Government, he agreed to speak with law enforcement and admitted to his participation in the fraud scheme and admitted his culpability. On November 9, 2020, Abdalla pled guilty to one count of conspiracy to offer and pay health care kickbacks, in violation of 18 U.S.C. § 371 and one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.

## II. Guidelines Calculation

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing a court "must first calculate the Guidelines range."

*Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the Probation Office has grouped the two offenses together and has used Count 2 to calculate the offense level, since it results in the higher level. The Probation Office has calculated Abdalla's total offense level at 33. This includes a base offense level of 6, a 20-level enhancement based on a total loss of more than $9,500,000 but $25,000,000 or less, a 2-level enhancement based on a conviction of a health care offense involving more than a $1,000,000 loss to a federal health care program, a 2-level enhancement based on the use of sophisticated means, a 2-level enhancement for abuse of trust, and a 4-level enhancement for role in the offense. It also includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. The guidelines range for this total offense level is 135-168 months.

In the Plea Agreement, the Government has agreed to recommend a loss amount in this case that is more than $3,500,000 but less than $9,500,000. In addition, in negotiating this deal, it was the intention of the parties that the Government would not recommend an additional +2 enhancement based on a loss to federal health care program of more than $1,000,000. Moreover, the Government has agreed to recommend a +2 enhancement based on Abdalla's role in the offense, instead of the +4 enhancement recommended by the Probation Office. The Government intends to be bound by the terms of this Plea Agreement and the intent of the parties during the plea negotiations. As such, the Government recommends a base offense level of 6, an 18-level enhancement based on a total loss of more than $3,500,000 but is $9,500,000 or less, a 2-level enhancement based on the use of sophisticated means, a 2-level enhancement for abuse of trust and a 2-level enhancement based on role in the offense. The Government's recommendation includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. Thus, the Government recommends a total

offense level of 27. The guidelines range for this total offense level is 70-87 months. As noted above, the Court has already sentenced one co-conspirator in this conduct and has departed from the Guidelines in that case. In recognition of that sentence and to promote consistency, the Government believes an appropriate sentence in this case is 60 months.

**III.  Section 3553(a) Factors**

After calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense," "the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense," the need "to promote respect for the law," the need for the sentence "to afford adequate deterrence to criminal conduct" and the need to "provide restitution to any victims." § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(7). As explained below, based on those factors, a sentence of 60 months is warranted, appropriate, and reasonable.

  *A.  A sentence of 60 months is appropriate based on the nature, circumstances, and seriousness of the offense.*

Here, Abdalla's conduct involved billing health care benefit programs for prescriptions that were not medically necessary, not prescribed by a medical practitioner, and/or not provided to the beneficiary. In addition, it involved paying kickbacks for the referral of prescriptions. Abdalla engaged in this conspiracy for an extensive period of time – for approximately five years -- and along with his co-conspirators, he defrauded federal, state, and private health care benefit programs of almost $8 million pursuant to all of the schemes involved. Abdalla profited considerably from this conduct and he recruited several of the participants into the scheme including Amin and Lal.

7

While Abdalla's pharmacy employees performed a lot of the work involved in executing the health care fraud schemes, it is clear that Abdalla was directing and orchestrating a large amount of the fraud, as evidenced by the fact that he profited exponentially more than any of the other pharmacy employees.

Moreover, along with his co-conspirators, Abdalla tried to hide the fraudulent conduct from PBMs that were auditing the pharmacy through various tactics such as creating false invoices and prescriptions intended to fool these PBMs into believing the pharmacy was not engaging in systemic and rampant fraud. The co-conspirators used their specialized knowledge of how PBMs investigate fraud to try to circumvent these audits and prevent the investigators from learning of the co-conspirators' illicit activities.

It is true that at times, the evidence indicates that Abdalla's employees would engage in acts to further the scheme that were on their own initiative and not at Abdalla's direction. It is also true that the evidence shows that Abdalla was recruited by Physician 1 and Myers to participate in the kickback scheme involving the compounded drugs and he received significantly less profit than his co-conspirators for that particular conduct. However, Abdalla was central to all of the fraud schemes at issue. Accordingly, given the length, scope, and seriousness of Abdalla's criminal conduct, a sentence of 60 months is warranted in this case.

> B. *A sentence of 60 months is appropriate in light of the defendant's personal history and characteristics.*

A sentence of 60 months is also appropriate in light of Abdalla's personal history and characteristics. Abdalla does not have any criminal history. However, it is important to note that Abdalla has been a licensed pharmacist since 2008. As a pharmacist, Abdalla held a position of public trust and Abdalla abused that trust by engaging in this scheme and allowing his decision-making and actions to be tainted by greed by knowingly billing health care benefit programs for

prescriptions that were not medically necessary and/or were not prescribed by a medical practitioner or not provided to a beneficiary. Moreover, Abdalla knew that it was improper to pay kickbacks for the referral of prescriptions but participated in several different schemes to offer payments for referrals. In addition, it is important to note that Abdalla was the owner and/or operator of the pharmacies at issue and had significant sway and influence over his employees, including Lal who viewed Abdalla as a mentor. Abdalla took advantage of this relationship and influenced the actions of Lal and other individuals who worked for him. A sentence of 60 months is thus necessary to account properly for his personal history and characteristics.

  C. *A sentence of 60 months is appropriate to promote respect for the law and afford adequate general deterrence of similar schemes.*

The need for general deterrence also warrants a sentence of 60 months. General deterrence is important in any white-collar case, but is particularly important here because health care fraud crimes like Abdalla's are difficult to detect. Health insurance benefit programs rely on pharmacists to make truthful representations about services being provided and the reasons they are being provided. These programs do not have the resources to investigate and verify that providers are complying with all applicable laws and rules. The jobs of these health care benefit programs become even harder when individuals, like the co-conspirators here, engage in conduct to hide their conduct such as creating false documentation. Moreover, health care fraud does not just harm the health care benefit programs – it harms the beneficiaries because higher health care costs increase the amounts that these individuals have to pay over time for needed medications and services. While there is no evidence in this case that any patient harm occurred, the financial ramifications of this conduct were pervasive. A term of imprisonment of 60 months is thus necessary to send a message to other potential fraudulent actors that crimes like this one that could result in significant financial harm will be met with an appropriate term of incarceration.

**IV.     Restitution**

The United States also asks that this Court impose restitution to the victims in the amount of $7,920,796.77 and that the Court direct forfeiture of assets, as required by the Plea Agreement. At sentencing, the Government will ask the Court to enter the restitution order and the consent order of forfeiture that will be provided to the Court and defense counsel prior to the hearing.

**V.      Conclusion**

For the reasons stated, the United States requests that this Court impose a term of incarceration of 60 months, as well as a period of supervised release of three years.

Respectfully submitted,

Raj Parekh
Acting United States Attorney


By: _____/s/_____
Monika Moore
Carina A. Cuellar
Counsel for the United States
Assistant United States Attorneys
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

By: _____/s/_____
Monika Moore
Counsel for the United States
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov